UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRIAN TIDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:15-cv-00007-RLY-DML |
| | ) | |
| THE HONORABLE BRUCE MARKEL; | ) | |
| THE HONORABLE BRUCE | ) | |
| MCTAVISH; THE HONORABLE | ) | |
| RICHARD POYNTER; and NORMAN | ) | |
| PHILLIPS, in their personal and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Brian Tidd, is a former employee of the Jackson County Probation Department. In his Second Amended Complaint, he alleges that Judges Bruce Markell, Bruce McTavish, and Richard Poynter, and Chief Probation Officer Norman Phillips (collectively "Defendants"), terminated his employment on the basis of his age, in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's claims are against the Defendants in both their personal (Count I) and official capacities (Count II). Chief Phillips and the Judges separately move for summary judgment on both counts. For the reasons stated herein, Defendants' Motions for Summary Judgment are **GRANTED**.

1

I.   **Factual Background**

A.   **The Probation Department**

The 40th Judicial Circuit is comprised of the Jackson Circuit Court (Judge Poynter), Superior Court 1 (Judge Markel), and Superior Court 2 (Judge MacTavish). (Filing No. 61-1, Declaration of Norman Phillips ("Phillips Decl.") ¶ 1).  Pursuant to statute, probation officers, including the chief probation officer, are appointed jointly by the judges of all three courts.  Ind. Code § 11-13-1-1(a), (d).  Chief Phillips, who was 67 years at the time of Plaintiff's termination, has been the Chief Probation Officer since 2001.  (Phillips Decl. ¶ 1).

Chief Phillips and four other probation officers work in Brownstown where the Jackson Circuit Court and Superior Court 2 are located.  (*Id.* ¶ 3).  The Brownstown office handles adult felony and juvenile cases.  (*Id.*).  Superior Court 1, located in Seymour, handles adult misdemeanor cases.  (*Id.*).  During the relevant time period, one or two probation officers were assigned to the Seymour office.  (*Id.*).

While Chief Phillips supervises probation officers, he does not have the authority to hire or fire probation officers.  (*Id.* ¶ 4).  That authority lies with the Judges to whom he reports.  (*Id.*).  In addition to his supervisory responsibilities, Chief Phillips carries a reduced caseload of probationers whom he directly supervises, oversees the budget of the Probation Department, prepares quarterly reports concerning caseloads and revenues and presents the probation budget to the Jackson County Council during annual budget hearings.  (*Id.*).

2

Probation is funded through a combination of user fees and appropriations from the county council. (*Id.* ¶ 5). If user fees are less than projected, Chief Phillips is required to go back to the council for an additional appropriation. (*Id.* ¶ 14).

Most of the probation budget is payroll for the probation officers and staff. (*Id.*). Indiana probation officers must be paid a minimum salary according to a schedule set by the Indiana Judicial Council. (*Id.*). The minimum salary depends upon years of experience. (*Id.*).

### B.    Plaintiff's Employment

Plaintiff began his employment with the Probation Department on February 12, 1996; he was 29 years old. (Filing No. 29, Second Am. Compl. ¶¶ 13, 14). Until 2011, Plaintiff worked in the Brownstown office, supervising felony and juvenile cases. (Filing No. 63-1, Deposition of Brian Tidd ("Plaintiff Dep.") at 45). In August 2011, Plaintiff requested a transfer to the Seymour office. (*Id.* at 67). Chief Phillips agreed to let Plaintiff transfer, but warned him that caseloads and revenues from Superior Court 1 were dropping and that, at some future point, there may no longer be two probation officers for that court. (Phillips Decl. ¶¶ 8, 9, and Ex. E).

### C.    The Seymour Office

Once the transfer occurred, the two probation officers in Seymour were Plaintiff and Gregory Scott. (Plaintiff Dep. at 67; Phillips Decl. ¶¶ 9, 26, and Ex. E). On August 22, 2011, Chief Phillips issued a letter to both Plaintiff and Scott, which noted the decline in the caseload at the Seymour office. (Phillips Decl. ¶¶ 8, 9; Plaintiff Dep. at 74-75). In the letter, Phillips stated, "[T]he way the caseloads are falling at [the Seymour office], I

do not know how much longer I will be able to justify stationing two full-time probation officers in Seymour."  (Phillips Decl., Ex. E).  Chief Phillips added that "if caseloads continue to fall as they have been falling, I can see the day when we will have only a full-time probation officer at Seymour, or a full-time and part-time probation officer to handle the [Seymour office] caseload."  (*Id.*).

In October 2013, Chief Phillips noticed a significant drop in the caseload and fee collections for the Seymour office.  (*Id.* ¶¶ 10, 12, and Exs. F, G).  On October 21, 2013, Phillips addressed the declining revenues and caseload in a memorandum to the Judges. The Memo stated:

- "The situation in the [Seymour] Probation Department has deteriorated more quickly than anticipated and the judges should be made aware of the details."

- The caseload for the Seymour office, not including alcohol and drug cases, dropped to 122, which "is less than a full caseload for one Seymour probation officer."

- Plaintiff had seventy-three cases and Scott had forty-nine cases.

- The Seymour office only collected "$7,067 in fees for the third quarter.  Only once before in more than 12 years has the Seymour office failed to collect at least $10,000 in fees for a quarter (that was the third quarter of 2012 when only $9,913 was collected)."

- The total payroll for the Seymour office would be $98,447.00 in 2014, with Plaintiff's salary at $51,568.00 and Scott's salary at $46,879.00.  These two salaries comprised 29% of the total probation payroll in 2014.

4

- In August 2013, he asked for an additional appropriation from the County Council in the amount of $281,000, and worried he would need an additional appropriation given the declining anticipated collections in the Seymour office.

- The collection situation is not expected to improve.

- In 2015, two probation officers will have completed 15 years of experience and one will have completed 10 years of experience, entitling them to step-raises.

(*Id.*, Ex. H at 1, 2).

Phillips spoke to each of the Judges individually about his concerns in the Memo. (*Id.* ¶¶ 15-16).  When Judge Markel asked for Chief Phillips' recommendation on how to remedy the situation, Chief Phillips advised that Plaintiff's employment should be terminated because he made nearly $5,000.00 more than Scott.  (*Id.* ¶ 17).  Chief Phillips had similar conversations with Judges MacTavish and Poynter, and once again reported the salary difference between Scott and Plaintiff.  (*Id.* ¶¶ 17-18).

Approximately three weeks after speaking with the Judges, Judge Markel informed Chief Phillips of their decision to lay off Plaintiff.  (*Id.* ¶ 19).  Chief Phillips was instructed to calculate Plaintiff's remaining vacation time and to inform him of the Judge's decision on the day that his vacation days would cover the remainder of the year. (*Id.*).

Chief Phillips notified Plaintiff that he was being laid off on December 10, 2013, due to the County's budget constraints.  (*Id.*; Plaintiff Dep. at 97).  At the time of his termination, Plaintiff was the longest-serving and oldest probation officer (besides Chief

Phillips) employed by Jackson County.  (*See* Phillips Decl. ¶ 26).  The other probation officers were in their mid- to late-30s.  (*Id.*).

Plaintiff's position was not filled.  (Plaintiff Dep. at 162).

All other facts necessary to a resolution of the present motions will be addressed in the Discussion Section.

## II.    Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented.  *See Anderson*, 477 U.S. at 248.  In deciding a motion for summary judgment,

6

the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)).  Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.  *See Anderson*, 477 U.S. at 255; *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

## III.   Discussion

Plaintiff, a state employee, may not sue his employer directly under the Age Discrimination in Employment Act due to, among other things, the State's Eleventh Amendment immunity.  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91-92 (2000). Instead, he may pursue his claim under 42 U.S.C. § 1983 as a violation of the Equal Protection Clause of the Fourteenth Amendment.  *Levin v. Madigan*, 692 F.3d 607, 621-22 (7th Cir. 2012).

### A.   Count I, Section 1983 Age Discrimination Claim Against Defendants in their Individual Capacities

Defendants[1] argue Plaintiff's Equal Protection Claim fails for two reasons: (1) the Judges' decision to lay off Plaintiff had a rational basis; and (2) Plaintiff cannot establish age discrimination under the familiar *McDonnell Douglas* method of proof.  Plaintiff

---

[1] In their Reply, the Judges adopted the arguments made in Chief Phillips' Moving Brief, including his argument under the rational basis standard of review.

argues his position only under *McDonnell Douglas*. For the sake of completeness, the court will address both arguments below.

### 1.     Rational Basis

Because age is not a suspect classification under the Equal Protection Clause, the claim is reviewed under the rational basis standard. *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006); *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003). To prevail under this standard of review, a plaintiff must prove that the defendant: "(1) intentionally treated him differently from others similarly situated; (2) intentionally treated him differently because of his membership in the class to which he belonged; and (3) the difference in treatment was not rationally related to a legitimate state interest." *Smith*, 457 F.3d at 650-51 (citing *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002)).

The evidence reflects that Jackson County was facing budgetary issues, and Plaintiff was the highest paid probation officer. The Seymour office, which was manned by two probation officers, only had the caseload for one. Based on these facts, the court finds the Judges' decision to lay off Plaintiff for budgetary reasons is rationally related to the legitimate governmental interest in conserving public funds. *See Kastel v. Winnetka Bd. of Educ., Dist. 36*, 975 F. Supp. 1072, 1084 (N.D. Ill. 1997) (failing to re-hire retirees to conserve school district's fiscal resources is rationally related to legitimate governmental purpose).

### 2.   *McDonnell Douglas* Framework

Plaintiff's *prima facie* case of age discrimination consists of four elements: (1) he
is a member of a protected class; (2) he met his employer's legitimate job expectations;
(3) he suffered an adverse employment action; and (4) similarly situated employees
outside of his protected class were treated more favorably.  *See Everroad v. Scott Truck
Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010).  Elements (2) and (4) are the subject of
dispute.

#### a.   Legitimate Expectations

The first issue is whether Plaintiff was meeting the County's legitimate
employment expectations at the time of his layoff.  Chief Phillips admits that at the time
he recommended Plaintiff's layoff to the Judges, "[he] suggested [Plaintiff] would be the
logical choice due to his higher salary."  (Phillips Decl. ¶ 21).  Although he previously
discussed Plaintiff's performance deficiencies with Judge Poynter on prior occasions,
including his "poor report writing skills and other issues," he does not recall doing so
when he recommended the termination of Plaintiff's employment.  (*Id.*).  When
confronted by Plaintiff over the reasons for his termination, Chief Phillips informed
Plaintiff that he had done nothing wrong and that the termination decision was solely due
to budgetary concerns.  (*Id.* ¶ 20).  Chief Phillips did counsel Plaintiff on several
occasions, but the last time he did so was in 2010—approximately three years before he
was terminated.  (Plaintiff's Ex. C at 7-8).  *See Fortier v. Ameritech Mobile Comm'ns,
Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (noting "the relevant time to consider is the
time of discharge").  The record contains no evidence of formal disciplinary action taken

against Plaintiff at any time during his tenure.  And while, in 2013, Chief Phillips

required Plaintiff to clock in due to complaints from Brownstown probation officers that

he was lifting weights during work hours, Plaintiff denies those assertions.  (Plaintiff

Dep. at 73-74).  He testified he lifted weights during his lunch hour.  (*Id.* at 74).  Viewing

the evidence in the light most favorable to Plaintiff, the court finds Plaintiff was meeting

the County's legitimate job expectations at the time of his termination.

### b.   Similarly Situated Individuals

The second disputed issue is whether similarly situated employees outside of his

protected class—i.e., younger—received more favorable treatment.  To satisfy this

element, the plaintiff must demonstrate that another employee is comparable in all

material aspects, including "whether the employees reported to the same supervisor,

whether they were subject to the same standards and whether they had comparable

education, experience and qualifications."  *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744,

751 (7th Cir. 2006).  This requires a "flexible, common-sense, and factual" examination

of the evidence.  *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).  As such, it "is

usually a question for the fact-finder, and summary judgment is appropriate only when no

reasonable fact-finder could find that plaintiffs have met their burden on this issue."  *Id.*

at 846-47.

Citing *Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709 (7th Cir. 1999), the Judges argue

that existing employees who take over a terminated employee's job responsibilities

pursuant to a reduction-in-force are not similarly situated for purposes of age

discrimination.  *Id.* at 717.  In finding Pitasi was not similarly situated to those who

remained employed, the court reasoned that he "was not replaced at all; instead, his duties were divided by two existing employees," one four months younger and one eight years younger. *Id.*  Because Pitasi's comparators were less than ten years his junior, "[t]he disparity in age between Mr. Pitasi and the two who took over his position is not significant enough, under the law of this circuit, to create a reasonable inference of age discrimination." *Id.*  In the present case, Scott, who is more than ten years younger than Plaintiff, took over his job responsibilities.  This critical fact renders *Pitasi* distinguishable from Plaintiff's case.

Both Defendants also maintain the other probation officers were not similarly situated because the work demands in the Brownstown office were more demanding than those in the Seymour office.  Chief Phillips also argues the disparity in pay between Scott and Plaintiff means he is not a valid comparator either.  The court rejects both arguments.  All Jackson County probation officers shared the same supervisor, were subject to the same standards. and had the same job duties.  *See Humphries. v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd* 553 U.S. 442 (noting that the common sense aspect of finding similar employees "is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees.").  Accordingly, a reasonable fact-finder could find Plaintiff established a *prima facie* case of age discrimination.

### c.      Pretext

According to Defendants, Plaintiff was laid off due to budgetary concerns.  Plaintiff does not dispute this assertion.  He nevertheless argues this reason is pretextual because his salary, which is governed by a set schedule, is inextricably linked with his

age; the older he becomes, the higher his salary.  Plaintiff concludes that "if [his] salary was the motivating factor in Phillips' recommendation that he be terminated, his age was the motivating factor, as well."  (Plaintiff's Response to Chief Phillips' Motion at 17; Plaintiff's Response to Judges' Motion at 21).

"[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).  Here, the salary determinant is experience.  (*See* Chief Phillips' Ex. B at 2 ("This minimum salary schedule is based upon years of experience. Therefore, as a probation officer's experience increases his or her salary increase[s] on the anniversary date of employment.")).  Although experience may be correlated with age, the two are analytically distinct.  *Hazen Paper*, 507 U.S. at 611 ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other.").  Therefore, a decision based on years of experience—which in this case meant a higher salary—is not necessarily age-based.  *Id.*  Thus, Plaintiff's pretext argument based on his salary does not raise an inference of pretext.

Plaintiff claims Chief Phillips' concerns regarding the drop in caseload and probation fees did not necessitate immediate termination of a probation officer in December 2013; therefore, he maintains, a jury could find such reasoning baseless.  But pretext requires more than an employer's mistaken belief.  *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) ("An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held.").  It requires proof from which a reasonable fact-finder could infer that the reasons

advanced by the Defendants in support of Plaintiff's termination are not the true reasons. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). ("A pretext, to repeat, is a deliberate falsehood."). The evidence does not support such an inference. At bottom, the decision at issue was based on the Defendants' business judgment. It is not the court's role to second-guess that decision. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (internal quotation marks omitted).

Plaintiff fails to present any genuine issue of material fact that would allow a jury to find the Defendants' reasoning for terminating his employment was pretextual. Accordingly, summary judgment is appropriate on Count I against all Defendants.

### B.     Count II, Section 1983 Age Discrimination Claim Against Defendants in their Official Capacities

Plaintiff's official capacity claims seek injunctive relief against the Defendants, "including reinstatement, all attorneys' fees and costs available, and all other available prospective injunctive relief." (Second Am. Compl., Requested Relief ¶ 1). A plaintiff seeking injunctive relief "must demonstrate that the defendant to be enjoined has the authority to effectuate the injunction." *Swan v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013). Chief Phillips does not have the authority to reinstate the Plaintiff. Furthermore, there is no evidence that either Chief Phillips or the Judges discriminated against Plaintiff because of his age. Therefore, summary judgment is appropriate on Count II against all Defendants.

**IV.    Conclusion**

The court finds no genuine issue of material fact exists on Plaintiff's claims against the Defendants.  Accordingly, the Judges' Motion for Summary Judgment (Filing No. 63) is **GRANTED** and Chief Phillips' Motion for Summary Judgment (Filing No. 61) is **GRANTED**.  The court will enter judgment accordingly.


**SO ORDERED** this 10th day of March 2017.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana




Distributed Electronically to Registered Counsel of Record.